Good morning, Your Honor. My name is Julie Cavanaugh-Bill. I'm counsel for plaintiff Naomi Heneage, who is in the courtroom here with us this morning. I'll be sharing my time with Barbara Sloan from the EEOC. I'll be taking seven minutes of time and then three minutes for rebuttal. So keep an eye on that clock in front of you. Yes, Your Honor. Okay. Your Honor, what we have here is a fairly straightforward employment discrimination case based on gender discrimination, retaliation, and then interference with an FMLA claim brought by Ms. Heneage and dismissed by the district court on, with respect to DTE, a Rule 12e or Rule 12c motion and with respect to NEI on a Rule 12b6 motion. We believe that the standard that was applied by the district court was in error. The court required that Ms. Heneage prove out a prima facie case in both instances, and that standard is not required according to the U.S. Supreme Court. And we cited that in our briefs. Counsel, before you launch into that, I wanted to ask you a quick question about the FMLA claim. Why was that claim not waived, that particular claim? Well, Your Honor, we believe that that claim can be decided on illegal, strictly as a matter of law. And so we don't believe it was waived. We did cite to that in our reply brief as well. So we would like to also have that reversed on the FMLA claim. And we did cite to that. She did take medical leave. She was released to return to work. She wasn't allowed to return to the position that she was in. And then she was terminated, whether that was in retaliation for the FMLA or the retaliation for her reporting on the discrimination in Title VII violations. I'm sorry. I'm not sure I followed your answer to Judge Graber's question. Are you saying it's waived, but we should overlook the waiver and decide the case anyway? No. Or are you saying it's not waived? And if your answer is it's not waived, I'd like to hear your reason not to because you launched right into why we could decide it, but you didn't say anything about why it's not waived as far as I'm concerned. We don't believe it's waived, Your Honor, because it can be decided as a matter of law at this level. It wasn't raised in your opening brief, right? No, it was not waived, Your Honor. Okay. Isn't failure to raise an opening brief waiver under Ninth Circuit law? We don't believe so, Your Honor. We did say to the Weiler case, I believe, in our brief that it can be decided as a matter of law, and so it should not be waived. It can be decided. We can overlook the waiver. But is there any doubt that it was waived? We don't believe it was waived, Your Honor. We believe that the briefing was focused on the Title VII allegations and the dismissal on those claims, but we do not believe that that was waived at that point. So if I may, Your Honor, with respect to the Title VII claims, the reasonings that or the allegations that were set forth in Ms. Hennage's complaint were sufficient to raise a plausible claim for relief. She's alleged every element that's necessary, and even if it's not necessary to raise every element in the Prima Facie case, she has created what is sufficiently plausible. And even if looking at the Shepard case, I believe this falls in line with that type of case as a straightforward employment discrimination case. She belonged to the protected class. She was female. She qualified for the position. She held the supervisory position for three years and had a good work performance, and then she suffered adverse employment action. She was not only was her FMLA not respected, but then she was also not retained for the new position with NEI. Now, NEI and DTE, I think, are playing a quick shuffle here with the Court in terms of are they two distinct companies that didn't know about Ms. Hennage's reporting activities earlier on. And that's one situation that they can assert, but I think the facts that are alleged in Ms. Hennage's complaint show otherwise and create an inference that, in fact, they were communicating. They officed next to each other. You had NEI. You had DTE. DTE was a contractor for NEI, which they admit in their brief, in the record, at 17, Volume 2, they stated that the ---- Was there evidence or was there an allegation that males were treated differently, similarly situated males were treated differently? Yes, Your Honor. In the complaint at paragraph 7, it states that males that were similarly situated were treated more favorably because they were retained. So when DTE, when the transition occurred, NEI kept males that were reasonably or similarly situated, Ms. Hennage, but they did not keep Ms. Hennage. And importantly, Ms. Hennage alleges that of the three women, the three women, the only three women in the industrial side of this operation, none of them were retained. And only one male was not retained, and he was one of the troublemakers. Correct, Your Honor. Right. And so I think there's a very strong inference here that what occurred was in that transition, they conferred, as Ms. Hennage alleges, that the DTE manager informed the NEI manager as they were officed next to each other. The NEI manager was in the facility and he informed them, here's what's going on, and these are the ones maybe we don't want to bring on. Opportunity moment. I know she alleged that, but the plausibility standard seems to me has to mean something. So what fact is alleged in that complaint that supports that claim that DTE told NEI about her protected status, that she supported this other woman who she thought was being subjected to a hostile work environment? It's just the lack of a fact there. You keep saying there's an inference that can be drawn. There's no fact. Well, Your Honor, I respectfully disagree. I think the fact is that if they were officed right next to each other in that same facility. Could I stop you there? You say they were officed. You say something about a director. Directors' offices were next to each other. But they officed next to each other. And we're to assume from that that they got together and colluded and said, don't hire this woman because she engaged in activity that supported another woman who was claiming hostile work environment. Correct, Your Honor. I think that it's more than likely that that is more than reasonable that that would have occurred, even in their own documents. And I'm not sure. Excuse me. We don't have any facts about who those offices were occupied by, whether they were the decision makers? Well, Your Honor, the allegation does say that it was the DTE manager and the NEI manager. That is Ms. Hennage's assertion. I thought it just said directors. No. The decision maker for DTE had his office next to the decision maker for Newmont. Correct. And no detail on what that means, an office next to. Correct, Your Honor. And if I could, I could pick that up in my rebuttal. I don't want to cut into Ms. Sloan's time. I did see in your motion for reconsideration, we finally got one fact from a gentleman from or maybe it was a woman that worked for NEI that indicated that they had been informed that one worker for DTE had been involved in some kind of protected activity. And that was better, but that wasn't in the complaint. Isn't this a pleading question? Well, Your Honor, if that's what the court decides, we would ask at a minimum that we have an opportunity for leave to amend to include that. Those materials were not available when Ms. Hennage first filed her complaint, and they are NEI's own documents, and they reference that he had some details but not many. So what details did he have about that reporting activity? Well, and if I could, I didn't see that you made a motion to amend. There was a request at one point of the court. So is your argument that you think the court was in error for not allowing you to amend or that your original pleading was adequate? Because this pleading strikes me as not one that we want to put out as a model of pleading. Well, Your Honor, we do believe that it was sufficient to raise a plausible claim for relief. But in the alternative, we would ask that we have leave to amend. Actually, counsel for Ms. Hennage requested both in the motion for briefing when they had the information on DTE's manager leave for amend and in the reply briefing to this court as well. And if I could just turn this over to Ms. Sloan for her portion of the argument. Thank you, Your Honors. Good morning, Your Honors. Barbara Sloan from the EEOC. I wanted to quickly respond to those questions there. I think in the court, this Court's decision in Cornwell, there's actually a suggestion that the decisionmaker, well, the CEO and the HR department had offices that were adjacent. And the plaintiff argued that that should be enough to survive summary judgment on whether the employer knew about the protected activity. And this Court said, well, in a summary judgment, maybe not, because there was But here, this motion is to amend. Well, there are other facts that permit that inference. I mean, the only four people who weren't hired by the new entity were the four troublemakers. And how would the new entity have miraculously come up with those four names if they didn't get information from the previous employer in some fashion? I mean, to me, that's a permissible and very plausible inference from the other facts that are pleaded here. So is it necessary to rely on just the offices next door? No, that's a little bonus there, Your Honor, in our view. Doesn't that undercut your plaintiff's sex discrimination argument? I mean, the four people that were not hired, as Judge Graber described, were troublemakers, right? And there were three women, one man. So the categorization doesn't seem to be just women. It seems to be troublemakers. And that might support the retaliation claim, but doesn't that undermine the sex discrimination claim? Well, I think those are not inconsistent theories, Your Honor. But the allegation is that similarly situated males were treated more favorably. That's exactly this. Well, more favorably than three women and one man. It turned out to be all the women, though. So, I mean, that's also a plausible inference. Exactly. The three women in the industrial side of the plan. Well, how do you deal with that? What if it is a situation with just one woman or one person, you know, one sex? And, you know, does that raise an inference of or what if or, I mean, I don't know what the remaining other employees are, but what if there are five employees altogether and the two people retained are two men and there are three women? I think this Court's decision, I think I hear where you're going. How do we evaluate what inference of non-retention or non-hiring is enough to raise a prima facie case of disparate treatment? Well, it's certainly entirely plausible that the successor employer would talk to the initial employer to find out who to retain and who not to retain. I'd like to also point out that the condition... Well, but he doesn't, that is not necessary for your sex discrimination claim. Presumably he can tell who are the men and who are the women. So... It's an allegation. Whether they talked or not doesn't matter for your purposes of your sex discrimination claim. It does matter perhaps for plaintiff's retaliation claim because that would suggest that sort of past history played a role. But if it's sex discrimination, that shouldn't matter, right? Similarly situated, it's just like... Do we know what the universe is? Your Honor, it's like... What is the universe of employees? Well, that would be something the employer would know better than I, Your Honor. This is just... Doesn't it have to be alleged if you want to claim sex discrimination? Let's say there was one other employee left. So they fired one male and three females, and then they retained one other employee, and that's a man. That looks a lot different than if there are 15, 20, 30 male employees and all of the women are... And that's exactly the things that the employer would bring out once the complaint gets passed. Why is that part of the prima facie case to show disparate treatment? We can just look at Shepard, Your Honor. In Shepard, five comparators were retained. The one who were younger, one was not. That's this case. I'm sorry. What were retained? Shepard. Five comparators. That's what it says. Five younger comparators were retained. Do we know how many were retained here? No. Without that base. That's what Shepard is, Your Honor. Without the denominator, how do we know? All we have is the numerator here. We don't have the denominator. And that was true in Shepard as well. I'm sorry. You said five were retained. Exactly. Five were retained. How many were retained here? Oh, I don't know. We don't know how many people there were in Shepard either, though, Your Honor. You understand what I mean by the denominator and the numerator? I understand exactly, and that's certainly relevant to the proof. The numerator is the one on top, so you have to have the base. I understand that. Actually, the numbers, Your Honor, are 17. I mean, 47 men retained, 13 men not retained. Four women retained, I mean, fired. Four women fired, three women retained. 47 men fired, I mean, retained, 13 fired. I think those are the numbers, and I'm sorry that I've just used up all of the rebuttal time. I'm sorry, these are the numbers here? I thought all the women were fired. On the industrial side, Your Honor, all three women on the industrial side were fired. Apparently there were a few, for example, secretaries and who knows, HR. Three of them were retained. Four women, including the only three women on the industrial side of the plant, were not retained. That's the information, as I understand it, that was provided in the supplemental complaint. And that's in the complaint? It's in that supplemental material, so it's in the record, yes, Your Honor. Okay. The numbers are fairly stark. Thank you, Your Honor. Okay. Okay, we'll hear from the defendant. Thank you, Your Honors. And may it please the Court, my name is Anthony Hall, and I am appearing on behalf of Newmont, Nevada Energy Investment, and Ms. Garcia is appearing on behalf of DTE. She'll be using the mic. Talk right into that mic. Sorry, Your Honor? Talk into the mic. Sorry, Your Honor. Ms. Garcia will be handling the final five minutes of our arguments. Your Honors, I want to start off by pointing out two specific things that I think are very important for this case. This case is exactly the kind of pleading that Twombly and Iqbal meant to prohibit. If we accept the appellant's and the EEOC's arguments, we are simply substituting one formulaic recitation for another. Well, it's not really formulaic. If you look at the industrial side, the allegation, at least, against your client, and we don't know at this stage whether it's true or not true, plaintiff was not hired. The other two women were not hired. All but one of the men were hired. That's the allegation on that piece of it. And your client gave several different explanations for their decision, which are alleged to be untrue. So I don't know why that wouldn't be a plausible inference of gender discrimination. And on retaliation, none of the four people alleged to be troublemakers were hired, and everybody else was, again, on the industrial side. That's the allegation. It may not be true. But I don't understand why that's not a plausible inference to be drawn from this complaint. Your Honor, I'd address that in a couple of ways. First, those arguments weren't presented to the district court below. This is said. Well, we're looking at new at the complaint. It doesn't matter. I mean, certainly the argument that this complaint suffices was made below, and we get to take a new look at that, whether this complaint survives or not. That's for us. Your Honor, your Honor, the other point I would make on this is really springboarding off what Judge Kaczynski said, which is to make a plausible argument of this collusion of some sort of action that would be consistent with discrimination or retaliation or gender discrimination, you have to allege facts that would create, in his words, the universe. I just gave you facts on the gender side. None of the three women hired, all but one man hired. False explanations given for that decision. On the retaliation side, why isn't it a permissible inference that if the only four people on the industrial side not hired are the four who caused trouble with the predecessor employer, why doesn't that support an inference that that wasn't just wild happenstance? I mean, it could be, or there could be some other reason, but that's, for the pleading, all we need is a plausible inference. Your Honor, I would point out a couple of things why that's not plausible. First, you still have to have the universe. What they've done here is falsely said, oh, people who blew the whistle non-industrial were kept, and somehow there's this line that is being falsely drawn in order to create a false statistic. Well, we don't know whether the allegations are true or false, but for purposes of determining plausibility, we must take all allegations in the complaint as true. They may prove not to be later, but that's not the pleading standard. So what's alleged is that the only people on the industrial side who were not hired by your client were the four troublemakers. Now, I know you don't agree that that's true, but that's for an answer, that's for summary judgment, that's for somewhere else. Your Honor, that's not what's alleged. What's alleged is three people that were females were not hired and one male were not hired. They don't allege the universe, and they didn't do that because they know that's not the universe. That's the part where I disagree with Your Honor. The universe was, in fact, 64 people on the industrial side, 47 were hired, 17 were not. They didn't allege that those were the only people. That's the game that's being played. And that's why Judge Kaczynski's point makes so much sense. They don't allege these were the only three. If that's what they had alleged, I would agree with Your Honor. But that's not what they alleged. In fact, they couldn't allege that and, in fact, contradict that when they made the motion for reconsideration. When they made the motion for reconsideration, they acknowledged those numbers and specifically pointed out to the Court, hey, in fact, there are 47 who were hired out of the 64. Seventeen were not hired. That's the point I'm trying to make, Your Honor, and I think that's the point Judge Kaczynski was making. You have to have the universe as part of the allegations to get there. And I think that that's the difference that we need. And why shouldn't they be allowed to amend the complaint to set all that forth? Two reasons, Your Honor. First, they never asked for leave to amend. They made a motion for reconsideration. So when they didn't follow the appropriate procedure for doing that and attach it to the complaint of how they would fix it, second, Your Honor, it would be futile. An argument to amend would be futile given that we know the universe as they've already presented it to the Court. You can't create an inference of discrimination or knowledge when you have 17 not hired, because now these four who allegedly were troublemakers no longer represent the entire universe. So they can't amend it to fix this problem. The reality is... Could I ask a question? In the motion to reconsider, they do come up, and I mentioned this to your opponent, that on page four of NEI's response, it states that Mr. Selinger, quote, was aware that a crew member on Ms. Heniage's team had complained about employment with DTE. So there's some reference in the motion which was not in the complaint. So I'm not exactly sure what posture we're in here, whether we're just going to focus on the complaint as a pleading. But with that new fact, do you think there's a plausible basis for a retaliation claim? With that new fact, Your Honor, I still don't believe that there is a plausible claim for retaliation. First, it's a conclusion. It's not a fact that says he has knowledge. And that's an important difference in Twombly. Well, it's not even ‑‑ it was what I said it was. He was aware that a member of Ms. Heniage's team had complained. So that's a fact. That's not a ‑‑ that's a pretty good fact. But I don't know about good in terms of quality, but it was a fact. So ‑‑ Your Honor, I would refer the Court back to Twombly and talk about the facts of Twombly and show the difference and why it wouldn't survive it. In Twombly, the Court specifically says it's context specific. In other words, alleging knowledge may do it in one and not in another. In Twombly, it was a specific case about collusion and conspiracy. That's what Twombly was all about. And in that case, they alleged inferior connections and overcharging and all this parallel conduct to say, look, this creates enough. The Supreme Court said, look, you've got to allege facts that establish that agreement. You can't do it with conduct that's consistent with it. You've got to go beyond that. Well, that was bid rigging or price fixing. And here we've got an allegation that somebody in the hiring company acknowledges that they knew about the protected activity or at least close to it, that someone on her team. I admit it doesn't get you all the way there. I just wonder if that had been in the complaint. And I think you just said that still wouldn't pass the Twombly test for plausibility. But I'm wondering why it wouldn't and why this judge didn't grant a motion for leave to amend on that basis. Your Honor, there's two things on that. Well, there was no motion, but grant the request. It was a motion for reconsideration, which is abuse of discretion. So this – that motion is abuse of discretion. It's not de novo that this Court is reviewing. And that's an important distinction. So the Court was presented four months after the case was already dismissed with this new allegation. And the Court determined in its discretion that wasn't enough to make it amend to grant. Well, there was more than this. There were the numbers that were talked about with Judge Kaczynski, the 47 and so on, that you mentioned earlier. That was all new material in the motion to reconsider, as I understand it. Yes, Your Honor. And I think that's part of why the Court didn't use its discretion to amend, because even if you assume that he maybe had knowledge, the fact is the numbers no longer make any sense. Because now you have 17 people not being hired, 14 of them being men. So the Court didn't use its discretion to allow an amendment at that point. Well, let's look at the retaliation claim and just look at the complaint. Let's not look at the additional material on reconsideration. Why isn't that enough to why an allegation is a complaint not enough to support a retaliation claim? For the retaliation claim, I go back to the initial comment we made before, and it goes right off yours, which is in the complaint, there is no allegation of what the universe is. There's an allegation about three people. You don't need a universe for retaliation. Your Honor, you need knowledge. You don't need a universe. All you need is allegation that the firing, or in this case not hiring, was based on protected activity. It doesn't matter whether everybody else got hired or anybody else got hired or anything else. Right? But you still have to have knowledge, Your Honor. And in this case there was no allegation. Right. But not a universe. You have to have knowledge. So let's talk about knowledge. What do they allege about knowledge? They allege that the predecessor, that she was a troublemaker because she refused to downgrade a subordinate, right, under the prior employer. And they allege that there was the prior employer was advising the new employer. No, Your Honor, they didn't. They only allege that the officers were next to each other. Well, they also allege that the NEI representative had advised her that a group had made the decision without mentioning the name of the group and that that gave rise. Also, they allege that they're informed and believes that the managers colluded. Your Honor, I'm eating in Mr. Garcia's time, so I'll answer that question and then close if that's okay with Your Honors. That the argument there is still based upon knowledge. The subsequent employer, my client, has to know about the protected conduct in order to have subsequent or different reasons matter. If you give different reasons just because someone explained it one way and another person explained it a different way, that doesn't matter unless there's knowledge. That pulls us back to back to knowledge. There is no allegation of factual knowledge. Their offices were next to each other, and that's it. Thank you, Your Honors. Okay. May it please the Court, Your Honor, Jill Garcia on behalf of DTE Energy Services, Inc., appellee in this matter. DTE asked the Court to uphold the judgment on the pleadings in its favor in this case for three primary reasons. First, the mainstay of the Court's decision on the motion for judgment on the pleadings really deals with the fact that the majority of these claims have a termination component. Heneage claims that she was terminated because of gender, because of retaliation, because of the FMLA. And DTE, the Court found here correctly that DTE ceased operations. Every single person was terminated when the contract expired. I want to ask you a theoretical question that is, I know you won't agree with the premises of it, but if there were an allegation that DTE caused NEI not to hire the plaintiff because she had been a troublemaker, would that state a retaliation claim, even though the non-hire wasn't yours to do? I think I'd have to say that I think there would be a claim there. I mean, I think this is two pieces. One is the termination, which clearly the judge ruled on, and clearly we couldn't have terminated her. Everybody was no longer employed by your client. I get that part. But there certainly are allegations in this complaint that the managers of the two companies talked to each other and that the four troublemakers on the industrial side, or four of them, were not hired subsequently. Why isn't there a plausible inference that the only way that the successor company could have possibly known that is from communications from your client? How else would they be able to figure out who are four troublemakers? I think that answer goes down, if we're just talking about the retaliation claim and not the gender discrimination. I'm just asking about retaliation. On the retaliation side, Your Honor, I think it comes down to sufficiency that was alleged in the actual complaint. Why isn't what I've said a perfectly reasonable inference to be drawn from the facts that are alleged? The facts that are alleged that you've just said are a few of the people. We don't know the totality of people and how many wouldn't have been hired. But the allegations are that the managers of the two companies colluded and being next door is only sort of inferential about that, and that the four troublemakers identified were not hired. Now, it doesn't matter how many other troublemakers there might be. I think it does matter how many there might be. Why? For a retaliation claim. Because she's saying that the four troublemakers were not hired, but we don't know how many other people were not hired. You don't need them to have not hired anybody else. If they recommended that the new employer not hire her in retaliation for her prior action, it doesn't matter who else got hired, didn't get hired. It's wholly irrelevant. I mean, you know, it might help at trial, but at this stage it doesn't matter. You can have a single person retaliation claim. I mean, it's hard to have a sex discrimination claim on a single employment action. I mean, you have to sort of show a larger universe, unless you have statements, you know, something like that. But you can have an inferential case on retaliation on just a single employer. I understand that part of what you're saying. I guess my position just remains that what's been alleged in the complaint wasn't sufficient to rise to that level at the district court level when the district court was reviewing the complaint. I'm sorry, it was not sufficient? It's not sufficiently positive. Well, help me out here. Let's say I want to write an opinion saying that. How would I explain it to the world? How would one say it? It's not enough? I'm not saying it's not just enough. I'm saying that the facts that we have here primarily are that we have two managers who had offices. We have two managers. One company sort of turned over the business to the other one, and this employee had trouble with the outgoing employer, and she doesn't get picked up by the new employer. A lot of people get picked up. Some people get picked up, and she doesn't get picked up, and there is at least an inference that they had communications. Why is that enough? I think that's where it comes down to the plausibility of that situation because we're still going back to the fact that these two had offices near each other. Well, there's also an allegation that NEI advised the plaintiff that a group had made the decision, and she is informed and believes that this group consisted of management at both of the companies. I guess here, Your Honors, again, that's nothing that was alleged in the complaint. It is. It's at page 2 of the complaint, paragraph 5. Could you repeat the question? Why isn't that an additional fact supporting a plausible inference that DTE told NEI about the troublemaking? The alleged facts on page 135 of the, I guess, the excerpts, lines 9 through 12, are that NEI told the plaintiff that a group had made the decision not to hire her, I'm paraphrasing, without identifying members of the group. Plaintiff is informed and believed in their honor verse that the group consisted of management at both of the defendants. That's also alleged. It's not just the next door. I guess my response would be what I've said so far, which is it's insufficient here to be facially plausible, and the judge that made the ruling as a gatekeeper has that authority to make the decision on whether or not it's plausibly sufficient. I'm out of time unless you want me to address anything else for the Court. I think we're done. Thank you. Thank you. We'll give you minutes for rebuttal, if you'd like. Thank you, Your Honor. Just a couple of points. First, when we're talking about the universe and what knowledge Ms. Hennage had when she made the allegations in her complaint, the knowledge she had that's set forth at paragraph 7 of the complaint is that the three women, the three women that were in the industrial side, none of them were retained or rehired. So that's the knowledge, three out of three. And then with respect to the explanations that the defendants come up with, according to BACA, if there's plausible explanations by the plaintiff and a plausible explanation by the defendant, the complaint survives. So we would ask that the Court reverse the lower court's ruling. What do you have in the complaint alleging collusion or knowledge or shared knowledge? Where in the complaint is it? I believe that's at paragraph 11, Your Honor. The record at one. It was paragraph 5 and 11. Thank you, Your Honor. The record 135 and 136. And also with respect to requesting leave to amend, Your Honor, this Court, you know, as we cited in our briefs, it should just as require leave to amend should be freely allowed. And in this case, I think it's a perfect example. If the Court's not going to reverse it and find that there are sufficient facts to set forth a plausible claim, then at a minimum that we get leave to amend, especially based on this new evidence that came from the defendant's own information. That was information that NEI had at the time they were filing and briefing their motion to dismiss. They knew. They knew these things that are contained now in the record that were attached to the ---- Let me ask you something about paragraph 5. The allegation of joint knowledge is at page paragraph 5, lines 11 and 12. Do you have them in front of you? Yes, I do, Your Honor. Okay. It is ---- That is the one portion of that paragraph that is on information and belief. Plaintiff is informed and believes, and they're on a verse and so on. Now, I remember my time in practice. Information and belief, you put that in a complaint when you didn't know. When you say ---- I'm not sure about your practice. It means we're really self-hoping that's the case. Normally, Your Honor ---- I actually meant this as a serious question because under ICBAO and TOMBLY, we ---- This is a serious question. I'm wondering what happens to information and belief allegations under ICBAO and TOMBLY. The Supreme Court has told us we have to look at things much more skeptically. And does this count for anything? Does an allegation of information and belief count for anything under the new regime? I believe it does, Your Honor. I believe when there aren't enough facts ---- You are informed and believe? And oftentimes the clients come in, and they are informed, and they believe the information that they receive. But as the attorney, but ---- But if they can say, John Smith told me this, you know, they can do that. They can say I was, you know, my boss told me this. Even if it is a hearsay allegation or, you know, not admissible proof in itself, that's different. But information and belief is quite vague and, you know, just my experience was put in where you really didn't know. It was really more a substitute for wishful thinking or hopefulness. And I don't mean to at all denigrate your case. And I'm just wondering whether an information and belief allegation nowadays counts for anything or can count for anything or whether this is the kind of thing that you have to have something more specific. Well, Your Honor, I do believe it does as long as there's other sufficient facts to support a plausible claim. And there are oftentimes where ---- What are sufficient facts here? The other sufficient facts are that Ms. Hennage brought these issues forward, that requesting an investigation, nothing was done. And these were serious ---- But this is under the prior employer, right? Correct. Okay. So the key here is there's no doubt that whatever happened happened with the prior employer. The sort of the sticking point is which for which if you can prove you can hold both of them liable is if they colluded, if they talked about it, if they passed this information on. And on that point, all I see is this information and belief allegation. Well, and they did. They had their offices right next door to each other. It's reasonable to infer that they were communicating. If you look at the additional information that was attached to the motion for reconsideration, which no party has objected to that or said that it's invalid or untrue, you actually see Mr. Sillinger, the manager, monitoring and observing Ms. Hennage and receiving information. It doesn't say clearly who it was from, but obviously the applicants they chose, the man, Mr. Riese, was one of the comments at the record on page 39 was that he got along well with plant management. Who told him that? Well, obviously he had to have gotten it from the DTE plant manager. So that information further confirms the information and belief that Ms. Hennage had at the time the complaint was filed. She might not have known everything. And this recent case that NEI submitted with their Rule 28J letter actually references that, that a lot of times in employment cases it's the employer that's going to have that information. We may not know exactly how many people were employed there. We may not know how many were in the industrial site versus other sites. But I understand and I wonder whether discrimination cases are in that way different under Twigball. It may be. I mean, this is a difficult area. And if I may, Your Honor, I think that's why the principles set forth under the Starr v. Baca case are appropriate. Because there you look at- Which case? Starr v. Baca, Your Honor. And in that case, I mean, the Ninth Circuit set forth the two principles. You know, is it reasonable notice? Does it give the other side a fair opportunity to defend themselves? Absolutely. Especially in this case. NEI not only had a fair opportunity to defend itself, it knew exactly what to avoid in its motion to dismiss. It knew that Ms. Hennage had been an applicant. It knew certain things. But it very technically went around those things so as to use this Twombly-Iqbal analysis against the employee, who is already at a disadvantage. I think that- Parties all over the universe are using Twombly and Iqbal to their advantage. I think this is what the Supreme Court meant. Correct. No, I mean, I think that in certain cases, certainly, the Supreme Court meant for parties to do a lot more work before they file a complaint than used to be the case. Correct. And the dissents- We have to sort out how much more work. Yes. And I think the dissents in both of those cases made a good point, that those were very large, complex cases that would involve a lot of expense and time on behalf of the defendants. And so to look at, as Ms. Garcia mentioned, the gatekeeper, what that role is and what the context of the case is, and I think in employment discrimination cases, the plaintiff comes in at a disadvantage already, as long as they've got enough information in there and facts that the employer knows what's being alleged or the potential employer knows what's being alleged. And I think that's clear from this case and I think it's clear even from their own briefings that they were given that sufficient notice in the allegations. Thank you. Thank you, Your Honor. The case is signed. You will stand submitted.
judges: Benson, Kozinski, Graber